IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

DOUGLAS S. FOSTER       )
                        )
    v.                  )     NO. 3:18-0323
                        )
KAREN H. BROOKS         )


**TO:**   Honorable William L. Campbell, Jr., District Judge


# R E P O R T   A N D   R E C O M M E N D A T I O N

By Order entered April 2, 2018 (Docket Entry No. 4), this *pro se* action was referred to the Magistrate Judge for pretrial proceedings under 28 U.S.C. §§ 636(b)(1), Rule 72(b) of the Federal Rules of Civil Procedure, and the Local Rules of Court.

Presently pending before the Court is Defendant Karen Brooks' motion (Docket Entry No.15) to dismiss this action for lack of subject matter jurisdiction and for failure to state a claim. Plaintiff has responded in opposition to the motion. *See* Docket Entry No. 19. For the reasons set out below, the undersigned respectfully recommends that the motion be granted and this action be dismissed.


## I. FACTUAL BACKGROUND

Douglas S. Foster ("Plaintiff" or "Foster") is a resident of Tennessee. For thirteen years, he was married to Karen H. Brooks ("Defendant" or "Brooks") before the couple was divorced on April 28, 2006, in the Chancery Court for Montgomery County, Tennessee ("Chancery Court"). As part of the divorce proceedings, they entered into a Marital Dissolution Agreement ("MDA") for the purpose of settling "their rights, responsibilities, and all property rights." *See* Complaint (Docket Entry No. 1) at 23. The MDA was incorporated into and made a part of the final decree of divorce, over which the Chancery Court retained jurisdiction. *Id*. at 20-21. At the time of the divorce, Plaintiff was actively serving in the United States Army, and Paragraph 6.A of the MDA ("Paragraph 6.A") specifically addresses the disposition of his military retirement benefits as follows:

> The parties mutually acknowledge that they have been married during thirteen (13) years (156 months) of Husband's active military service and that he now holds the rank of Captain (03). In the event the Husband should retire from the military at a higher rank and thereby becomes eligible for retired military pay, the parties agree that the Wife shall have 33% of the Husband's disposable retirement pay at the grade of Captain and that said amount shall be payable for a period of thirteen (13) years (156 months) regardless of whether the Husband attains a higher rank than Captain. It is the express intent of the parties that the Wife shall only be entitled to 33% of Husband's disposable military retirement pay for thirteen years (156 months) at the rank of Captain and Wife forever releases Husband of any further payments. In the event that the Husband draws disability payments that reduce his retirement benefits, this will in no way reduce Wife's entitlement as stated above.

*Id*. at 29.

After Plaintiff retired from the military in 2015 with 23 years of service, Brooks filed an application with the Defense Finance and Accounting Service ("DFAS") for the United States Department of Defense, seeking payment of a share of Plaintiff's military retirement benefits as per the MDA. By a letter dated June 22, 2015, Brooks was informed that her application could not be approved because the divorce decree she submitted with the application provided for division of the retirement benefits by means of a hypothetical amount of retired pay as of the time of divorce and did not provide enough information to calculate that amount. Brooks was directed to obtain a clarifying court order that awarded her a fixed dollar amount or a percentage of Plaintiff's actual disposable retirement pay. *Id*. at 35.

Although there were several months of communications between the divorced couple about the amount due Brooks under Paragraph 6.A, they did not agree upon an amount or a modification of the MDA and they ended up in the Chancery Court again. On January 19, 2016, Brooks filed a petition for contempt, asserting that Plaintiff had not made payments under Paragraph 6.A and seeking a judgment for the arrearage, an order on her portion of the benefits that was acceptable to the DFAS, and an award of costs and attorneys fees. *Id*. at 36-37. Plaintiff countered with a motion for declaratory judgment, asserting (1) that monthly sum payable to Brooks under Paragraph 6.A should be calculated by a method using Foster's "high 36 months of basic pay" at the time of his divorce and should result in a monthly payment to Brooks of $465.86 and (2) that this sum had been

2

agreed to by Brooks during their preceding communications and that an order should be entered declaring this to be the amount payable to Brooks under the Paragraph 6.A. *Id*. at 39-41.

After a hearing on May 24, 2016, the Chancery Court issued a memorandum opinion on July 5, 2016, in which the court:

(1) adopted, with some exceptions, proposed statements of facts submitted by the parties;

(2) rejected Plaintiff's claim of an enforceable agreement based upon emails exchanged between the parties;

(3) found that there was no intent for Plaintiff's military retirement benefits to be calculated using a present value calculation based on the value of the retirement benefits at the time of the divorce, as sought by Plaintiff;

(4) found that Plaintiff's military retirement benefits were a non-vested right at the time of the divorce and that Brooks' award amount under Paragraph 6.A should be calculated as of the date of Plaintiff's retirement using Plaintiff's rank as of the date of the divorce decree; and

(5) denied Brooks' request for Plaintiff to be found in civil contempt and for an award of attorney's fees. *Id*. at 48-49. The Chancery Court (1) directed Brooks' attorney to prepare a final order consistent with the memorandum opinion that included a calculation of the arrearage owed to Brooks and (2) provided that Plaintiff would have the opportunity to object if he found the arrearage calculation to be in error. *Id*. at 49.

Brooks' attorney submitted a proposed order, to which no objection was made. The proposed order was entered without change by the Chancery Court on July 26, 2016 ("July 26, 2016 Order"). The July 26, 2016 Order stated that:

(1) the calculation of Brooks' award of military retirement benefits should be based upon the retired pay of Captain 03E, as of the date of Plaintiff's retirement in 2015, which equaled $3,844.00 per month based upon figures from a 2015 Military Retirement Pay Chart that was attached as an exhibit to a supplemental memorandum that had been filed by Brooks;

(2) Brooks be awarded the amount of $1,281.33 per month for a period of 13 years beginning May 2015 as her share of Plaintiff's military retirement benefits;[1]

(3) Brooks be awarded a judgment in the amount of $12,697.46, for which execution may issue, as arrearage for payments not fully made by Plaintiff for the period of May 2015 to July 2016;[2] and,

(4) Plaintiff shall not be deemed in civil contempt and there shall be no award of attorney's fees or other relief. *Id*. at 54-56.

Plaintiff unsuccessfully appealed the Chancery Court's order to the Tennessee Court of Appeals, which affirmed the Chancery Court's judgment in all respects. *See Foster v. Foster*, 2017 WL 2992979 (Tenn. Ct. App. July 14, 2017). The Tennessee Court of Appeals affirmed the Chancery Court's use of the "retained jurisdiction method" to value and calculate Brooks' share of the military retirement benefits under Paragraph 6.A based on the amount of the retirement benefits at the time of retirement instead of the present value position argued by Plaintiff. The Tennessee Court of Appeals also found that the Chancery Court was correct in rejecting Plaintiff's argument that Brooks was bound by e-mails in which she had acknowledged $465.86 as her monthly share under Paragraph 6.A.

## II. PLAINTIFF'S FEDERAL LAWSUIT

On March 28, 2018, Plaintiff filed this lawsuit against Brooks, asserting that federal question jurisdiction exists under 28 U.S.C. § 1331. He seeks relief under 42 U.S.C. § 1983 for alleged violations of his constitutional rights by Brooks and also asserts state law claims for wrongful

---

[1] In order for Brooks to receive a direct payment of the military retirement benefits award and because Plaintiff actually retired as a Major 04, a higher rank than Captain 03E, the Chancery Court adjusted the percentage of Plaintiff's military retired pay to be paid to Brooks downward from 33% to 30.478% of Plaintiff's actual military retired pay plus any cost of living increases. *See* Docket Entry No. 1 at 55, ¶¶ 3-4

[2] Although the Chancery Court found that Brooks was due $19,219.50 for 15 payments from May 2015 through July 2016, Plaintiff had made payments to Brooks in the amount of $6,522.04 based upon his calculation of $465.86 as her share of the military retirement benefits.

4

detention or conversion of Plaintiff's property by Brooks and what appears to be a contract claim. Plaintiff alleges that Brooks engaged in fraud upon the Chancery Court during the proceedings in 2016 and, as a result, wrongfully obtained a judgment awarding her a greater share of Plaintiff's military retirement benefits than that to which she was entitled. He contends that Brooks' wrongful conduct occurred under color of state law and caused him to be deprived of his property without due process, as well as violated his equal protection rights.

Specifically, Plaintiff alleges that the amount of Brooks' share of his military retirement benefits under Paragraph 6.A that is set out in the July 26, 2016 Order was not calculated correctly and was the result of a fraud on the Chancery Court. Plaintiff asserts that the 2015 Military Retirement Pay Chart used as the basis for calculating the amount of Brooks' share is a document that was not argued by the parties or entered into evidence at the hearing before the state court but was merely an exhibit attached to a supplemental memorandum that Brooks' attorney filed, *see* Complaint at ¶ 22 and 29-30, and a document that Brooks "slid into" the final order. *Id*. at ¶ 30(e). Plaintiff contends that it was an act of fraud upon the Chancery Court for Brooks to use this documents for the proposed order because (1) the document was not evidence that had been entered in the proceeding and (2) the document itself is not an official pay chart and does not provide an accurate and correct determination of Plaintiff's actual retirement pay at the time of his retirement. *Id*. Plaintiff also points to other errors in the July 26, 2016 Order, which he contends modified the MDA without the agreement of the parties, *id*. at ¶ 30, and asserts that Brooks "took full advantage of the opportunity and awarded herself everything she never asked for in her Petition, never raised or litigated at the hearing, and never proved through any form of evidence." *Id*. at ¶ 28. Plaintiff alleges that his due process and equal protection rights were violated when he was denied the opportunity to contest and argue against this document. *Id*. at ¶ 45. Plaintiff also contends that Brooks' failure to use the correct method of calculating his actual retirement pay in accordance with 10 U.S.C. §§ 1401-1415 violated the Supremacy Clause of the United States Constitution. *Id*. at ¶¶ 49-52.

In his prayer for relief, Plaintiff seeks compensatory damages of $31,851.88, as well as compensation for any damages that occur up to the date of judgment, special damages, and attorneys' fees and costs. He also requests a declaratory judgment under 28 U.S.C. §§ 2201 and 2202, seeking a declaration that :

> (1) Brooks' use of a pay chart, rather than 10 U.S.C. Chapter 71, is invalid for the purpose of calculating his military retirement pay or any hypothetical retired pay;
>
> (2) Brooks' actions in procurement of judgment be deemed a fraud upon the state court and a violation of Plaintiff's constitutional right to due process;
>
> (3) Plaintiff has satisfied the requirements of Paragraph 6.A of the MDA in full as of the date of his retirement; and
>
> (4) Brooks be enjoined from any continued or further enforcement or attempt at enforcement of Paragraph 6.A of the MDA.

*Id.* at ¶¶ 3-5 and 18.

Because the Court's initial review of the complaint raised questions about whether the Court had subject matter jurisdiction over the lawsuit, the Court directed that Plaintiff show cause why the lawsuit should not be dismissed for lack of subject matter jurisdiction. *See* Order entered April 16, 2018 (Docket Entry No. 5). Upon Plaintiff's response to the Order, *see* Docket Entry No. 13, the Court found that Plaintiff had shown sufficient cause to require Defendant Brooks to respond to the complaint.[3] *See* Order entered May 25, 2018 (Docket Entry No. 14).

### III. MOTION TO DISMISS AND RESPONSE

In lieu of an answer, Defendant Brooks has filed the pending motion to dismiss pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) for lack of subject matter jurisdiction and for failure to state a claim upon which relief can be granted. Brooks argues that Plaintiff's lawsuit is essentially a request that the Court act as an appellate court and review the decisions of the Tennessee Court of Appeals and the Chancery Court regarding the interpretation of Paragraph 6.A

---

[3] Although the Court required Defendant to respond to the complaint, the Court specifically noted that it was making no determination on the issue of subject matter jurisdiction or on the sustainability of Plaintiff's lawsuit.

as to the amount of Plaintiff's military retirement pay to which Brooks is entitled. Brooks argues that the *Rooker-Feldman* doctrine, the Anti-Injunction Act, and principles of *res judicata* all prohibit the Court from undoing the state courts' orders or from blocking their enforcement. Additionally, Brooks argues that she is not a state actor who acted under color of state law and, thus, is not amenable to being sued under 42 U.S.C. § 1983 for the alleged constitutional violations. Brooks also contends that there is no private right of action for Plaintiff's claimed violations of the Supremacy Clause and the Contracts Clause. Finally, Brooks assert that the Court should decline supplemental jurisdiction over any remaining state law claims upon the dismissal of Plaintiff's federal claims. *See* Motion to Dismiss (Docket Entry No. 15) and Memorandum in Support (Docket Entry No. 16).

In response, Plaintiff argues that his lawsuit does not attack a state court judgment but, instead, he is bringing independent claims against Brooks under 42 U.S.C. § 1983 and under state law for violating his rights by committing a fraud upon the Chancery Court and by acting upon what Plaintiff contends is a state court judgment that is void due to the fraud. *See* Memorandum in Opposition (Docket Entry No. 19). He contends that these factors cause his case to fall outside both the *Rooker-Feldman* and *res judicta* doctrines. He argues that he has adequately alleged that Brooks acted under color of state law for the purposes of 42 U.S.C. § 1983 and that the Anti-Injunction Act does not apply to his civil rights claims against Brooks. Finally, Plaintiff asserts that 10 U.S.C. §§ 1401 *et seq*., creates a right in his military retired pay that may not be circumvented or ignored by states or private parties and that he has asserted a cause of action under this statute because federal laws were "circumvented in calculating my retired pay and in calculating [Brooks'] benefit from my pay." *Id*. at 13.

### IV. STANDARDS OF REVIEW

Defendant Brooks seeks dismissal, in part, for lack of subject-matter jurisdiction under Rule 12(b)(1) by raising a facial attack to Plaintiff's lawsuit. A facial attack "questions merely the sufficiency of the pleadings." *Gentek Bldg. Prods., Inc. v. Sherwin-Williams Co.*, 491 F.3d 320, 330

(6th Cir. 2007). In reviewing such a challenge, the Court will accept the factual allegations in the complaint as true. *Id*.

With respect to Brooks' request for dismissal for failure to state a claim for relief, Rule 12(b)(6) requires a complaint to contain "enough facts to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937 173 L.Ed.2d 868 (2009) (quoting *Bell Atl. v. Twombly*, 550 U.S. 544, 570 (2007)). To be facially plausible, a claim must contain sufficient facts for the court "to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. While *Twombly* does not require "detailed factual allegations," more than "labels and conclusions" is required. *Twombly*, 550 U.S. at 555. A legal conclusion couched as a factual allegation need not be accepted as true, nor are recitations of the elements of a cause of action sufficient. *Iqbal*, 556 U.S. at 678; *Fritz v. Charter Township of Comstock*, 592 F.3d 718, 722 (6th Cir. 2010). In review of a Rule 12(b)(6) motion, the Court accepts as true all of the well-pleaded allegations in the complaint, resolves all doubts in Plaintiff's favor, and construes the complaint liberally in favor of the *pro se* Plaintiff. *See Kottmyer v. Maas*, 436 F.3d 684 (6th Cir. 2006); *Boswell v. Mayer*, 169 F.3d 384, 387 (6th Cir. 1999); *Morgan v. Church's Fried Chicken*, 829 F.2d 10, 11-12 (6th Cir. 1987). Although the Court is required to apply a liberal construction, this does not require the Court to apply a more lenient application of the substantive law. *See Bennett v. Batchik*, 1991 WL 110385 at *6 (6th Cir. 1991) (citing *Wolfel v. United States*, 711 F.2d 66, 67 (6th Cir. 1983)); *Lyons v. Thompson*, 2006 WL 463111 at *4 (E.D. Tenn. Feb. 24, 2006).

The Court has appropriately considered filings from the relevant state proceedings in review of the motion to dismiss. *See Jackson v. City of Columbus*, 194 F.3d 737, 745 (6th Cir. 1999), *overruled on other grounds by Swierkiewicz v. Sorema, N.A.*, 534 U.S. 506, 122 S.Ct. 992, 152 L.Ed.2d 1 (2002); *Vaughn v. Metro. Gov't of Nashville & Davidson Cty.*, 2014 WL 234200, at *3 (M.D. Tenn. Jan. 22, 2014); *Lee v. Dell Products, L.P.*, 236 F.R.D. 358, 361 (M.D. Tenn. 2006).

# V. ANALYSIS AND CONCLUSIONS

After consideration of the parties' filings, the Court finds that two substantial jurisdictional bars exist that prevent the Court from adjudicating Plaintiff's claims. Plaintiff's attempt to use his federal lawsuit as a means to circumvent the July 26, 2016 Order of the Chancery Court is unfounded and not well taken. Given the clear jurisdictional bars to adjudicating Plaintiff's claims, it is not necessary to address Defendant's alternative arguments for dismissal.

A. Subject Matter Jurisdiction

Federal courts are courts of limited jurisdiction and do not possess general jurisdiction to hear all claims brought by litigants. *Bender v. Williamsport Area Sch. Dist.*, 475 U.S. 534, 541, 106 S.Ct. 1326, 89 L.Ed.2d 501 (1986). As it specifically concerns the instant case, federal district courts do not have the authority to engage in appellate review of state court judgments. *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 291-92, 125 S. Ct. 1517, 161 L. Ed. 2d 454 (2005). To that end, the *Rooker–Feldman*[4] doctrine bars federal district courts from hearing "cases brought by state-court losers complaining of injuries by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Fieger v. Ferry*, 471 F.3d 637, 642 (6th Cir.2006) (citing *Exxon Mobile Corp.*, 544 U.S. at 284).

Although the application of the *Rooker-Feldman* doctrine can often be a thorny matter, the Court finds that Plaintiff's lawsuit falls squarely within the scope of *Rooker-Feldman*. Plaintiff litigated his position on the interpretation of Paragraph 6.A before both state trial and appellate courts and was unsuccessful in convincing the state courts that his position was correct. As a result, Brooks obtained a state court final order and judgment awarding her 13 years of payments from Plaintiff's military retirement benefits based on the retained jurisdiction valuation method and awarding her a monetary judgment for arrearage on some of the payments. After losing in the state courts, Plaintiff has now come to this Court claiming that Brooks is not entitled to what she was

---

[4] *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462, 103 S.Ct. 1303, 75 L.Ed.2d 206 (1983); *Rooker v. Fidelity Trust Co.*, 263 U.S. 413, 44 S.Ct. 149, 68 L.Ed. 362 (1923).

awarded and seeking to circumvent, alter, and reject the Chancery Court's ruling that Paragraph 6.A entitles Brooks to the award that was made in the July 26, 2016 Order, and order that was affirmed upon appeal to the Tennessee Court of Appeals. This proceeding is exactly the type of lawsuit intended by the *Rooker-Feldman* doctrine to be foreclosed from federal district court review.

Plaintiff has obviously read case law and has taken steps to craft his lawsuit in a manner that attempts to bypass application of the *Rooker-Feldman* doctrine by bringing his lawsuit against only Brooks and by alleging that she committed fraud upon the Chancery Court, which resulted in various infringements of Plaintiff's constitutional rights. To be sure, there is case law on the *Rooker-Feldman* doctrine holding that if a federal plaintiff "present[s] some independent claim, albeit one that denies a legal conclusion that a state court has reached in a case to which he was a party . . ., then there is jurisdiction and state law determines whether the defendant prevails under principles of preclusion." *Exxon Mobil Corp.*, 544 U.S. at 293; *McCormick v. Braverman*, 451 F.3d 382, 392 (6th Cir. 2006). However, an independent claim sufficient to bring a case outside the scope of the *Rooker-Feldman* doctrine does not exist, regardless of who is sued as the defendant and regardless of the basis for the claim, if the source of injury at issue is the state court judgment itself. *See McCormick*, 451 F.3d at 393. Examining the request for relief made by Plaintiff is useful in determining what is the source of the injury at issue. *In re Isaacs*, 895 F.3d 904, 912 (6th Cir. 2018).

In the instant case, examination of Plaintiff's request for relief shows that the July 26, 2016 Order is the source of his alleged injuries. The $31,851.88 in compensatory damages Plaintiff seeks is the sum Brooks is alleged to have received from Plaintiff's military retirement benefits as of the date the lawsuit was filed, *see* Complaint at 12, ¶ 38, a recovery by Brooks that has occurred only because of the July 26, 2016 Order. Additionally, Plaintiff requests an order that (1) declares as invalid the manner in which the Chancery Court calculated Brooks' award, (2) declares that Plaintiff has satisfied the requirements of Paragraph 6.A in full as of the date of his retirement, and (3) enjoins Brooks from continued or further enforcement of Paragraph 6.A. *Id.* at ¶ 18. As such, Plaintiff is not simply presenting a claim that may "deny a legal conclusion" reached by the Chancery Court, he is asking for relief that effectively overrules and vacates the July 26, 2016 Order and is asking this

10

Court to enter relief that negates and reverses the judgment of Chancery Court, as well as the appellate decision of the Tennessee Court of Criminal Appeals, on the issue of Brooks' entitlement to retirement benefits under Paragraph 6.A. Such a scenario is barred by *Rooker-Feldman*. *See Pletos v. Makower Abatte Guerra Wegner Vollmer, PLLC*, 731 Fed.App'x 431, 436 (6th Cir. 2018) (plaintiffs' claims that effectively sought to appeal state court order were barred by *Rooker-Feldman* even though they were asserted as independent claims against third parties); *Givens v. Homecomings Fin.*, 278 Fed.App'x 607, 609 (6th Cir. 2008) ("Because the point of this suit is to obtain a federal reversal of a state court decision, dismissal on the grounds of *Rooker-Feldman* was appropriate."); *Bowman v. Cortellessa*, 2012 WL 676406 (E.D. Ky. Feb. 29, 2012) (plaintiff was barred by *Rooker-Feldman* doctrine from bringing claims against former spouse based on allegations that federal military retirement benefits had not been appropriately awarded in state divorce proceeding and that the former spouse provided the state court with false and/or perjured information about the amount of creditable service at issue).

The undersigned has read Plaintiff's arguments against the application of the *Rooker-Feldman* doctrine. *See* Response (Docket Entry No. 13) and Memorandum in Opposition (Docket Entry No. 19). In light of the law noted *supra* and the alleged facts of this case, these arguments are unpersuasive and, to a certain extent, are somewhat self-serving.

Plaintiff argues that the July 26, 2016 Order is void *ab initio* because of the alleged fraud, and that federal courts are not barred by *Rooker-Feldman* from review of state court orders that are void. However, there is no plausible basis for a conclusion that the July 26, 2016 Order is a void judgment. A judgment is void *ab initio* or void on is face only when the issuing court either lacked subject matter or personal jurisdiction over the proceedings, or the judgment itself was outside of the pleadings. *Gentry v. Gentry*, 924 S.W.2d 678, 680 (Tenn. 1996). None of these factors is present in the instant case. The Chancery Court clearly had subject matter jurisdiction over the divorce proceedings and the issue of the division of marital property. *See* Tenn. Code. Ann. §§ 36-4-105 and 36-4-121. The interpretation of Paragraph 6.A was well within the scope of the motion for

11

civil contempt and the motion for declaratory judgment that had been brought before the Chancery Court.

Plaintiff also argues that the fraud exception to the *Rooker-Feldman* doctrine applies. He alleges that Brooks committed a fraud upon the Chancery Court by submitting a proposed order that relied upon the 2015 Military Pay Chart, which he alleges had not been made a part of the evidence in the state court proceeding. However, there is no plausible basis for any reasonable claim of fraud on the Chancery Court by Brooks. The underlying legal issue before the Chancery Court was interpreting Paragraph 6.A and determining what valuation method should apply to his military retirement benefits that were at issue in Paragraph 6.A. Plaintiff's argument that Paragraph 6.A required use of the more restrictive "present value" method of valuation based on the value of the benefits at the time of divorce in 2006 was rejected, and the Chancery Court applied the retained jurisdiction method based on the value of his retirement benefits as of the date of his retirement in 2015. The 2015 Military Pay Chart had no impact upon the underlying issue of what Paragraph 6.A requires and was used only in the ultimate calculation of Brooks' share after the valuation issue was decided. Furthermore, even if the Court takes as true that the 2015 Military Pay Chart is not an actual pay table or pay chart but is instead only a general or summarized chart of military retirement pay, this does not render it a false, manufactured, or fraudulent document.[5] Finally, the 2015 Military Pay Chart was, in fact, part of the record that was before the Chancery Court since it was submitted as an exhibit to a supplemental brief filed by Brooks in the 2016 proceedings. Plaintiff's protest that the Chancery Court should not have used the 2015 Military Pay Chart does not raise an issue of fraud but merely raises a disagreement with the evidentiary basis for the Chancery Court's ultimate calculation of Brooks' share of the military retirement benefits. This issue, as well as Plaintiff's other objections to the content of the July 26, 2016 Order, are not issues of fraud, but are

---

[5] Curiously, the Court notes that at no point in his filings does Plaintiff show the difference between (1) the "summarized" monthly amount of military retirement pay for a Captain 03E retiring in May 2015, $3,844.00, that is set out in the 2015 Military Pay Chart and upon which the Chancery Court relied and (2) the monthly amount of military retirement pay that could have been specifically determined for Plaintiff at the time of retirement in May 2015 using his actual "high 36 months of pay, times [his 23] years of service, times the pay multiplier of 2.5%." *See* Complaint at 8, ¶ 30.f.

12

alleged errors by the trial court, errors which Plaintiff did raise through objections before the Chancery Court or upon appeal to the Tennessee Court of Appeals.[6] Plaintiff's contention that the fraud exception to the *Rooker-Feldman* doctrine applies is groundless.

In the end, Plaintiff has not shown any basis for a conclusion that the *Rooker-Feldman* doctrine does not apply and this Court should adjudicate the claims Plaintiff now seeks to pursue against Brooks in his lawsuit.

B. Domestic Relations Exception

An additional basis exists which precludes the Court from hearing Plaintiff's lawsuit. The "domestic relations exception" precludes federal courts from hearing cases that "involv[e] the issuance of a divorce, alimony, or child custody decree." *Ankenbrandt v. Richards*, 504 U.S. 689, 704, 112 S.Ct. 2206, 119 L.Ed.2d 468 (1992); *Alexander v. Rosen*, 804 F.3d 1203 (6th Cir. 2015). Although the domestic relations exception "applies only to a 'narrow range' of cases," *Alexander*, 804 F.3d 1205 (quoting *Ankenbrandt*, 504 U.S. at 701), it precludes a federal court from adjudicating a claim when a plaintiff "positively sues in federal court for divorce, alimony, or child custody or seeks to modify or interpret an existing divorce, alimony, or child custody decree." *Chevalier v. Estate of Barnhart*, 803 F.3d 789, 797 (6th Cir. Oct. 1, 2015) (internal citation omitted). "Even when brought under the guise of a federal question action, a suit whose subject is domestic relations generally will not be entertained in a federal court." *Firestone v. Cleveland Trust Co.*, 654 F.2d 1212, 1215 (6th Cir. 1981); *Chambers v. Michigan*, 473 Fed.App'x 477, 479 (6th Cir. April 5, 2012) (domestic relation exception precluded the federal court from hearing claims related to state alimony

---

[6] Plaintiff failed to object to the Chancery Court's use of the 2015 Military Pay Chart and to any other issues he had with the July 26, 2016 Order despite having at least three opportunities to object: (1) during the approximately two weeks between Brooks' attorney's service of the proposed order and the entry of the July 26, 2016 Order, a period for objections specifically contemplated by the Chancery Court; (2) during the period for any post-judgment motions; and (3) in his appeal to the Tennessee Court of Appeals. Plaintiff's assertion that he was under no obligation to raise objections in the state courts because he viewed the July 26, 2016 Order as void, as well as his contention that he was "robbed of the right to be heard" and was not provided with due process, are completely baseless and self-serving.

order even though plaintiff's claims were couched as claims for an unconstitutional deprivation of property) ; *Partridge v. State of Ohio*, 79 Fed.App'x 844, 845 (6th Cir. 2003) (although the plaintiff raised civil rights claims, including claim against his ex-wife for perjury in divorce proceedings, the domestic relations exception precluded federal court from hearing his case because his case was essentially a challenge to the state court's child custody and divorce decisions).

The instant lawsuit is not simply a lawsuit involving claims that happen to be between two people who were formerly married. Such a scenario would not fall within the domestic relations exception. *See Drewes v. Ilnicki*, 863 F.2d 469, 471 (6th Cir. 1988). To the contrary, Plaintiff's lawsuit essentially asks the Court to modify the amount of benefits that the state divorce court found that Brooks was entitled to under Paragraph 6.A and to redetermine the amount of those benefits. Plaintiff also asks the Court to specifically declare that he has satisfied his obligations under Paragraph 6.A as of the date of his retirement, even though the state court implicitly found this to not be the case, and to enjoin Brooks from continued enforcement of her rights under Paragraph 6.A, even though the state court ordered that she had an affirmative right to the ordered amount of retirement benefits until April 2027. By any reading, Plaintiff's lawsuit seeks a federal order interpreting and modifying the existing terms of the current divorce decree and the incorporated MDA. The domestic relations exception precludes the Court from entertaining such a lawsuit. *Chambers*, *supra*; *Partridge*, *supra*; *Danforth v. Celebrezze*, 76 Fed.App'x 615, 617 (6th Cir. Sept. 4, 2003) ("a fair reading of the plaintiff's complaint and his brief on appeal reveals that the instant case essentially is a pretense to obtain federal review of domestic relations matters. As such, plaintiff's complaint constitutes an impermissible attack on state court proceedings. Under these circumstances, the district court correctly concluded that it lacked jurisdiction to review plaintiff's [42 U.S.C. § 1983] claims.).

C. Federal Question Under 10 U.S.C. §§ 1401-1415

Finally, Plaintiff argues that he has alleged a federal claim under 10 U.S.C. §§ 1401-1415 that is sufficient to support federal question subject matter jurisdiction. The Court disagrees.

14

First, Plaintiff's actual complaint does not assert a claim under 10 U.S.C. §§ 1401-1415, but instead specifically asserts a claim based on allegations that Brooks violated the Supremacy Clause of Article VI of the United States Constitution by failing to apply "controlling federal laws" regarding calculation of Plaintiff's military retirement pay. *See* Complaint at 15, ¶¶ 49-52. However, the Supremacy Clause is not a "source of any federal rights" and does not create a private cause of action. *Armstrong v. Exceptional Child Ctr., Inc.*, __ U.S. __, 135 S. Ct. 1378, 1383, 191 L. Ed. 2d 471 (2015).

In response to the motion to dismiss, Plaintiff contends that the substance of his complaint is that he is asserting a claim for violation of federal law regarding calculation of his military retirement pay. *See* Plaintiff's Response at 12-13, at ¶ 28. However, he has not shown any authority for the proposition that 10 U.S.C. § § 1401-1415 creates for him a private right of action under the facts of this case or that the Chancery Court was prevented from taking the action it took by any provision contained in 10 U.S.C. §§ 1401-1415. None of the case law Plaintiff sets forth, *see* Docket Entry No. 13 at 5-6, supports his contention that a private federal cause of action exists under these statutes.[7]

Furthermore, while federal statutes and regulations control the determination of federal military retirement pay, the Chancery Court did not determine Plaintiff's actual military retirement pay. The DFAS makes that determination. The Chancery Court merely determined what share of Plaintiff's retirement pay should be awarded to Brooks under Paragraph 6.A. The Court fails to see a Supremacy Clause issue that arises from the facts of this case.

## RECOMMENDATION

Accordingly, the undersigned respectfully RECOMMENDS that the motion to dismiss (Docket Entry No. 15) of Defendant Karen Brooks be GRANTED for the reasons herein stated and

---

[7] To the contrary, the Supreme Court in *Howell v. Howell*, __U.S.__, 137 S.Ct. 1400, 1402, 197 L.Ed.2d 781 (2017), confirmed that 10 U.S.C. § 1408(c)(1) allows a State to treat as community property, and divide at divorce, a military veteran's retirement pay.

that this action be DISMISSED for lack of subject matter jurisdiction and under the domestic relations exception to jurisdiction.

ANY OBJECTIONS to this Report and Recommendation must be filed within fourteen (14) days of service of this Report and Recommendation and must state with particularity the specific portions of this Report and Recommendation to which objection is made. *See* Rule 72(b)(2) of the Federal Rules of Civil Procedure and Local Rule 72.02(a). Failure to file written objections within the specified time can be deemed a waiver of the right to appeal the District Court's Order regarding the Report and Recommendation. *See Thomas v. Arn*, 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). Any response to the objections must be filed within fourteen (14) days after service of objections. *See* Federal Rule 72(b)(2) and Local Rule 72.02(b).

Respectfully submitted,

BARBARA D. HOLMES
United States Magistrate Judge